IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

NAPOLEON JUNIOR RANKIN,       )
                              )
            Petitioner,       )
                              )
      v.                      )      1:16CV183
                              )
JAMES MCRAE,                  )
                              )
            Respondent.       )

ORDER AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Petitioner Napoleon Junior Rankin,[1] a prisoner of the State of North Carolina, has

brought a Petition [Doc. #1] seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

Petitioner has also filed a Motion to Appoint Counsel [Doc. #15].  Respondent opposes the

Petition with a Motion for Summary Judgment [Doc. #6].  For the reasons set out below, the

Court will deny Petitioner's Motion to Appoint Counsel, and recommend that Respondent's

Motion for Summary Judgment be granted and that Petitioner's Petition be denied.

Petitioner was convicted in 2012 of attempted second-degree rape, following a jury trial

in Guilford County, North Carolina.  State v. Rankins, 228 N.C. App. 569, 2013 WL 3991805,

at *1 (Aug. 6, 2013) (unpublished).  Following that conviction, he pled guilty to being a habitual

felon.  The court sentenced him to 144 to 182 months imprisonment.  Id. at *4.

---

[1] Petitioner spelled his last name "Rankin" on his Petition, causing this Court's docket sheet to reflect that spelling.  However, the Court notes that Petitioner's state court records show his name as "Rankins."

Petitioner appealed to the North Carolina Court of Appeals. He raised two issues there: (1) whether he received ineffective assistance of counsel when counsel admitted his guilt during closing argument; and (2) whether he received ineffective assistance of counsel when counsel elicited opinion testimony from the sexual assault nurse. (Pet.'s App. Br. [Doc. #7-4] at 6.) The Court of Appeals found no error.

Petitioner filed numerous *pro se* motions or petitions in the North Carolina Court of Appeals and North Carolina Supreme Court. The state court record submitted by Respondent contains a copy of a Motion for Appropriate Relief ("MAR") [Doc. #7-7] filed by Petitioner in May 2014. In that MAR, Petitioner claimed that his indictment was defective because it did not allege that the victim was raped "against her will," and that the trial court erred by not instructing the jury on the lesser included offense of assault. The state court record also contains a copy of an Order [Doc. #7-8] denying MAR relief with respect to a MAR filed on December 19, 2014. In that Order, the court noted that Petitioner had filed four previous MARs which were denied, and that the claims raised by Petitioner in the current MAR "have either previously been made in the earlier MARs or in his appeal, or could have been made in such earlier MARs or appeal. Therefore, Defendant's current MAR is procedurally barred."

Petitioner subsequently filed the present *pro se* petition on March 1, 2016. The matter is now before the Court on Respondent's Motion for Summary Judgment. Petitioner was advised of his right to respond and has responded in opposition to Respondent's Motion.

2

## Petitioner's Claims

Petitioner raises the following claims in his Motion: (1) insufficient evidence; (2) defective indictment; (3) subject matter jurisdiction; and (4) jury instructions. (Petition [Doc. #1].) Respondent moves for summary judgment arguing that Petitioner is not entitled to any relief.

## Trial Evidence

The North Carolina Court of Appeals summarized the evidence presented at Petitioner's trial in pertinent part as follows, using a pseudonym for the victim's name:

> In August 2010, nineteen-year-old Elizabeth lived with her mother in Guilford County. On 29 August 2010, Elizabeth had an argument with her mother and left their house. At about 6:00 p.m., Elizabeth went to the two-bedroom home of her great-uncle, Defendant. Defendant was fifty-one at the time of trial. . . .
>
> Elizabeth and Defendant gave conflicting testimony as to what happened later that night. Elizabeth testified that at about 4:00 a.m., she woke up in the spare bedroom to "a poke" in her vaginal area. From the light of the television, Elizabeth saw Defendant naked and on top of her wearing a condom. Elizabeth's shorts had been pulled down and her legs were spread open. She had blood on her legs and clothes. Elizabeth testified she felt Defendant's penis touch her "private area." She later testified slight penetration may have occurred. Elizabeth quickly said, "[W]hat the f*** [are you] doing, what the f*** [are you] thinking." Defendant then asked for a cigarette. Elizabeth responded, "You ain't coming to get no daggone cigarette over top of me," and Defendant ran back to his room.
>
> However, Defendant testified he went into Elizabeth's bedroom around 4:00 a.m. fully-clothed to turn off the television and air conditioner. After he turned them off, he testified he kicked Elizabeth's bed and asked for a cigarette. He testified Elizabeth responded by saying, "You trying to mess with me." Defendant said he wasn't "trying to mess" with her and left the room. Defendant testified he never touched Elizabeth in a sexual manner.

3

Immediately after Defendant left Elizabeth's bedroom, Elizabeth called her mother and said "Napoleon was on top me, he tried to rape me, he tried to rape me." Shortly thereafter, Elizabeth's other great-uncle, Ronnie Rankins, picked her up and took her home. By the time Elizabeth got home, her mother testified she was hysterical. Elizabeth's mother called the police and an ambulance.

At 5:47 a.m., Officer Matthew Johnson ("Officer Johnson") was dispatched to Elizabeth's home. Officer Johnson saw Elizabeth was "very upset, visibly shaken" and "crying." Elizabeth told Officer Johnson about her alleged rape. EMS took Elizabeth to Wesley Long Hospital that morning.

Shortly thereafter, police went to Defendant's home, arrested Defendant for rape, and took him to jail. At 8:47 a.m., Special Victims Unit Detective Frances Banks ("Detective Banks") interviewed Defendant at jail. Defendant denied all the allegations. Defendant consented to a search of his residence and gave Detective Banks a key to his home.

Later that day, Detective Banks searched Defendant's home. Detective Banks saw two condom wrappers and one condom with a red stain in the kitchen trash bag. Detective Banks also saw bed sheets with a red stain laying on the floor outside the spare bedroom. Detective Banks sent the condom, bed sheets, and a pair of Defendant's boxers to the crime lab for further analysis.

At 6:31 a.m., Officer G.H. Wilde, Jr. ("Officer Wilde") was dispatched to visit Elizabeth at Wesley Long Hospital. Office Wilde saw Elizabeth "was visibly distraught, weeping, crying, still unable to formulate full sentences." Elizabeth eventually told Officer Wilde about the alleged rape.

Around 8:30 a.m., Elizabeth met with registered nurse and sexual assault nurse examiner Jackie Perkins ("Nurse Perkins") at Wesley Long Hospital for about three hours. Initially, Elizabeth refused examination, but she later consented. During the exam, Elizabeth told Nurse Perkins: "I couldn't believe he would do something like that. I know what I felt. He didn't get in me, because the minute I woke up from the pressure down there I jumped." Nurse Perkins did not find Elizabeth had suffered any physical trauma. However, at trial Nurse Perkins testified Elizabeth's menstrual

4

blood would lessen friction during sex, reducing the chances of tears, rips, or bruises to Elizabeth's vaginal area. During the exam, Nurse Perkins completed a sexual assault data form and took hair and blood samples for the sexual assault exam kit. After the exam, Elizabeth met with Detective Banks and gave another account of the alleged events. Nurse Perkins gave Detective Banks the sexual assault exam kit. Detective Banks sent the sexual assault exam kit to the crime lab for further analysis.

At the crime lab, forensic scientist Jessica Posto and Special Agent Timothy Baize performed tests on Elizabeth's sexual assault exam kit and the items taken from Defendant's home. Defendant's boxer shorts showed blood and sperm. The condom Detective Banks found in Defendant's kitchen trash bag also contained blood. The blood matched Elizabeth's DNA. The condom also contained Defendant's DNA.

State v. Rankins, 2013 WL 3991805, at *1-*3 (footnotes omitted).

Discussion

A.    Motion to Appoint Counsel

Petitioner has moved for appointment of counsel. However, there is no constitutional right to appointed counsel in a habeas case. See Pennsylvania v. Finley, 481 U.S. 551, 555 (1987) (holding that "the right to appointed counsel extends to the first appeal of right, and no further"); United States v. Williamson, 706 F.3d 405, 416 (4th Cir. 2013) ("[A] petitioner has no Sixth Amendment right to counsel in order to mount a collateral challenge to his conviction."); Hunt v. Nuth, 57 F.3d 1327, 1340 (4th Cir. 1995) (noting that a petitioner "had no constitutional right to an attorney during his federal habeas proceeding"). Under 28 U.S.C. § 2254 and 18 U.S.C. § 3006A, the Court, in its discretion, may appoint counsel if it "determines that the interests of justice so require." 18 U.S.C. § 3006A(a)(2). Appointment of counsel is also

5

required if discovery is otherwise authorized and counsel is needed for effective discovery or where an evidentiary hearing is to be held. See Rules 6(a) and 8(c) of the Rules Governing Section 2254 Proceedings in the United States District Courts. Having reviewed Petitioner's request for counsel and the record in this matter, the Court does not find that appointment of counsel is required by the interests of justice or otherwise. The Court notes that a Motion for Summary Judgment has been filed, Petitioner has filed several Responses, and that Motion is now fully briefed and is presently before the Court. Given the current stage of the proceedings, there is no basis for appointment of counsel at this time. Therefore, Petitioner's request for counsel will be denied

B.      Ground One: Insufficient Evidence

In his Petition, Petitioner first argues that insufficient evidence was produced at trial to sustain his conviction for attempted rape. He argues that Nurse Perkins testified that she found no physical evidence of sexual assault and that the victim had said that Petitioner did not penetrate her. Based on this evidence, Petitioner contends that the State's evidence did not raise more than a suspicion or conjecture of his guilt. (Pet. at 11-13.) Respondent argues that the evidence set forth in the opinion of the North Carolina Court of Appeals is constitutionally sufficient to support Petitioner's conviction. (Resp. Br. [Doc. #7] at 3.)

"[A] claim that evidence is insufficient to support a conviction as a matter of due process depends on 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Wright v. West, 505 U.S. 277, 284 (1992) (quoting Jackson v. Virginia, 443

U.S. 307, 319 (1979)). In North Carolina, "to obtain a conviction for attempted second-degree rape, the State must prove beyond a reasonable doubt that (1) the accused had the specific intent to commit rape; and (2) the accused committed an overt act for the purpose, which goes beyond mere preparation, but falls short of the complete offense." State v. Farmer, 582 S.E.2d 352, 354 (N.C. Ct. App. 2003). Intent may be inferred from the facts and surrounding circumstances. Id. Evidence "that an attack is sexually motivated will support a reasonable inference of an intent to engage in vaginal intercourse with the victim even though other inferences are also possible." State v. Oxendine, 564 S.E.2d 561, 564 (N.C. Ct. App. 2002) (internal quotation marks omitted).

In this case, there was sufficient evidence presented at Petitioner's trial to convict him of attempted second-degree rape. The victim testified that she awoke in the middle of the night to find Petitioner naked on top of her wearing a condom and that she felt Defendant's penis touch her vaginal area. Her shorts had been pulled down and her legs were spread open. This evidence alone provides the specific intent to commit rape and the overt act required for conviction. But there was more evidence, specifically the condom in the kitchen trash bag which had on it both the victim's DNA and Petitioner's DNA. Thus, it is clear that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Therefore, sufficient evidence supported his conviction, and there is no merit to Petitioner's first ground for relief.

C.    Ground Two: Defective Indictment

Petitioner next argues that the indictment in his case was defective because it did not allege vaginal intercourse committed against the victim's will.   Respondent argues that Petitioner's indictment was sufficient to put him on notice of the charge and enable him to prepare a defense, and that any alleged deficiency did not render Petitioner's trial fundamentally unfair.

Petitioner's indictment specifies that it is for "Second Degree Rape."  It alleges that Petitioner "unlawfully, willfully, and feloniously did ravish and carnally know [the victim], who was at the time physically helpless."  (Indictment [Doc. #7-3] at 6.)  The indictment specifies that the alleged offense was in violation of N.C. Gen. Stat. § 14-27.3(A).  That statute provided that a person was guilty of the offense if the person "engages in vaginal intercourse with another person: (1) By force and against the will of the other person; or (2) Who is . . . physically helpless, and the person performing the act knows or should reasonably know the other person is . . . physically helpless."[2]

To the extent that Petitioner contends that his allegedly defective indictment violated state law, that claim is not cognizable in this federal habeas corpus proceeding.  See Wright v. Angelone, 151 F.3d 151, 157 (4th Cir. 1998) (holding that a petitioner's argument that the state court lacked jurisdiction over two counts of  petitioner's indictment "rests solely upon an interpretation of Virginia's case law and statutes, [and] is simply not cognizable on federal habeas review").  Federal habeas corpus relief may be granted "only on the ground that [the petitioner]

---

[2] The statute was recodified as N.C. Gen. Stat. § 14-27.22 in December 2015 and was modified to change the name of the offense to "second-degree forcible rape."

is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. 2254(a). Thus, "[v]ariances and other deficiencies in state court indictments are not ordinarily a basis of federal habeas corpus relief unless the deficiency makes the trial so egregiously unfair as to amount to a deprivation of the defendant's right to due process." Ashford v. Edwards, 780 F.2d 405, 407 (4th Cir. 1985).

In this case, to the extent Petitioner may be attempting to raise a due process or Sixth Amendment claim, the Court considers whether the indictment violated the guarantee of "notice that is sufficient to allow a reasonable defendant to prepare for trial." Stroud v. Polk, 466 F.3d 291, 297 (4th Cir. 2006). However, Petitioner does not contend, and the record would not support the conclusion, that his indictment failed to provide sufficient notice to allow a reasonable defendant to prepare for trial. Petitioner knew that he was accused of rape, when and where the offense allegedly occurred, and the identity of the alleged victim. Petitioner argues only that the indictment did not include an allegation of vaginal intercourse against the victim's will. However, the indictment specifically alleged that he "did ravish and carnally know" the victim. In addition, the indictment specifically cited N.C. Gen. Stat. § 14-27.3(A). See Stroud, 466 F.3d at 297 (noting the "critical fact" that the indictment cited the state murder statute and thus notified the petitioner that he needed to defend against the charge on any and all grounds). Therefore, Petitioner's federal constitutional rights were not violated by his indictment, and this ground for relief has no merit.

9

D.      Ground Three: Subject Matter Jurisdiction

Petitioner's third ground for relief alleges that the state court lacked subject matter jurisdiction in his case. This claim is based upon Petitioner's argument that his indictment was defective because it did not include all elements of the offense. However, as noted above, any state law challenge to the indictment is not cognizable in this federal habeas corpus proceeding. See Wright v. Angelone, 151 F.3d at 157; Castillo v. Perritt, 142 F. Supp. 3d 415, 418 (M.D.N.C. 2015). In addition, as discussed above, Petitioner has not shown that any alleged deficiency resulted in a federal due process violation. As with Ground Two, there was no constitutional violation, and this claim has no merit.

E.      Ground Four: Jury Instructions

Finally, in Ground Four of his Petition, Petitioner claims that the trial court erred by not instructing the jury on "the lesser charge of assault." (Petition at 6.) Petitioner argues that the jury would have convicted him of that offense if given the opportunity.

However, Petitioner has not shown that the Supreme Court or the Fourth Circuit has recognized a federal constitutional right to a lesser-included-offense instruction in a non-capital case. See Johnson v. Keith, 726 F.3d 1134, 1135 n.2 (10th Cir. 2013) ("[N]either this court nor the Supreme Court has recognized a federal constitutional right to a lesser included instruction in non-capital cases."); Robinson v. North Carolina Attorney Gen., 238 F.3d 414, 2000 WL 1793060, at *1 (4th Cir. Dec. 7, 2000) (noting that "the Supreme Court has never held that due process requires lesser-included instructions in non-capital state trials," and recognizing that

applying such a rule would violate <u>Teague v. Lane</u>, 489 U.S. 288 (1989)).  Therefore, there is no

basis for federal habeas relief on this claim.

For all of the above reasons, Petitioner's Petition should be denied.[3]

IT IS THEREFORE ORDERED that Petitioner's Motion to Appoint Counsel [Doc.

#15] is DENIED.

IT IS RECOMMENDED that Respondent's Motion for Summary Judgment [Doc. #6]

be granted, that Petitioner's Petition [Doc. #1] be denied, and that this action be dismissed.

This, the 3rd day of February, 2017.

                                        /s/ Joi Elizabeth Peake
                                    United States Magistrate Judge

---

[3]  The Court notes that Respondent also contends that Petitioner's claims are procedurally barred. However, the record does not include all of Petitioner's MARs or the respective Orders denying them.  In the circumstances, and because Petitioner's claims are without merit in any event for the reasons set out above, the Court need not reach this alternative argument.